STATE of Minnesota, ex. rel., Marilyn ONDRACEK, Petitioner, Appellant,

v.

Jeffrey BLOHM, Respondent.

No. C7–84–1610.

Court of Appeals of Minnesota.

Feb. 19, 1985.

Thomas L. Johnson, Hennepin Co. Atty., Mark Chapin, Asst. Co. Atty., Minneapolis, for appellant.

William R. Kennedy, Hennepin County Public Defender, David Knutson, Asst. Public Defender, Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from an order denying appellant's objections to allow respondent Blohm to deny paternity in a URESA petition. We reverse.

## FACTS

Marilyn Ondracek and Jeffrey Blohm were married in 1974 and divorced on July 20, 1978 (in Itasca County). The Judgment and Decree provides as follows:

That there have been born two children, as a result of the marriage, to wit: Kelly Corrinne Blohm, age three years and Jeffrey Allen Blohm, Jr., age one year.

The children were born, respectively, December 12, 1974, and December 31, 1976. The court ordered child support in the amount of $35 per month for each child, support to begin on Blohm's release from St. Cloud Reformatory.

Blohm was initially represented by counsel in the dissolution action, which his wife initiated. His counsel filed for him an Answer & Counter-Petition, signed and sworn to by Blohm, which admitted the following:

4. That two children have been born as issue of said parties, namely Kelly Corrinne Blohm, age 3 years, and Jeffrey Allen Blohm, Jr., age 1 year.

The Counter-Petition sought a decree of separation rather than a dissolution, and requested custody of the children. Before the dissolution hearing, Blohm discharged his attorney and thereafter appeared pro se. There is no indication that the paternity issue was the cause of the disagreement with counsel, or that Blohm contested paternity at the hearing.

Itasca County brought a URESA action against Blohm in 1982, claiming that he had paid no child support. Following several continuances, Blohm appeared in Hennepin County Family Court in January, 1983, and stated that he had consulted with an attorney who had advised him to contest paternity and request blood testing. The county opposed the motion for blood tests. The referee ordered a public defender appointed to represent Blohm.

A Family Court referee on March 1, 1983, ordered blood testing. Blood tests were taken in October, 1983, and the results appear in appellant's appendix showing greater than 99% likelihood of paternity of both children. The results, however, do not appear in the file, and the referee set a pre-trial conference on the issue of paternity. The trial court, reviewing this order and finding that "the file contains no evidence of the results of the blood tests which were performed on [Blohm]," confirmed the referee's order allowing Blohm to go forward with this defense. The trial court rejected the county's claim that the defense of non-paternity was barred under principles of res judicata.

## ISSUE

Did an affirmative finding of paternity in a judgment and decree of dissolution constitute res judicata to bar the asserted defense of non-paternity in a subsequent URESA action?

## ANALYSIS

Appellant contends that paternity was clearly placed in issue by the pleadings in the dissolution action and that the finding of fact that the children are the minor children of respondent is res judicata and bars further litigation of the issue in the paternity action. We agree.

Respondent argues that the issue of paternity was not actually litigated in the dissolution action. Further that because respondent was unrepresented by counsel in the dissolution action, res judicata should not apply.

The trial court relied on *Mund v. Mund,* 252 Minn. 442, 90 N.W.2d 309 (1958) and *Smith v. Smith,* 235 Minn. 412, 51 N.W.2d 276 (1952) as limiting the conclusive effect of dissolution decrees.

In *Smith,* however, the parties withheld from consideration of the court the issues claimed to have been litigated (i.e., property settlement). In *Mund,* the court permitted the reopening of a judgment and decree of dissolution on the issue of paternity where the parties stipulated that there was *no* living issue of the marriage.

The facts in this case are different. The issue was not withheld but considered and decided. In *Mund* the issue was not in-

tended to be part of the judgment, but under our facts it was. The *Mund* case was heard by default, while in this case both parties appeared at the hearing. Finally, in *Mund,* the post-judgment order facilitated legitimizing the child. Here, there is an attempt to illegitimize 2 children, ages 7 and 9.

 The trial court relied on principles of collateral estoppel requiring that an issue be actually litigated in order to preclude later adjudication. However, we find principles of res judicata, or "claim preclusion," applicable. *See, Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978). The issue of paternity arises in relation to the claim for child support, and is required to be raised in every dissolution petition. *See,* Minn.Stat. § 518.10(e) (1982). That claim, having been considered and decided against appellant in the dissolution action, is res judicata, and precludes the defense of non-paternity. Generally courts have not permitted such a defense where paternity has been found in a dissolution decree. *See, e.g., Luedtke v. Koopsma,* 303 N.W.2d 112 (S.D.1981); *Baum v. Baum,* 20 Mich.App. 68, 173 N.W.2d 744 (1969).

 In regard to respondent's contention that because he was not represented in the divorce action res judicata should not apply, we find no statutory or constitutional right to counsel in dissolution proceedings.

In *Hepfel v. Bashaw,* 279 N.W.2d 342, 348 (Minn.1979), the court held

that in paternity adjudications counsel must be provided indigent defendants where the complainant is represented by the county attorney. * * * It must be noted that the issue before us was narrowly limited to the right to counsel in paternity actions, which are, by their very nature, sui generis. Thus, our holding in no way affects the right of indigent defendants in other civil actions to court-appointed counsel.

A dissolution action, however, is distinguishable from a paternity action. Although the same financial consequences may result, neither party is represented by the county attorney. Moreover, due to the presumption of paternity, the evidentiary problem identified in *Hepfel* is not present. Finally, with children found to be issue of the marriage, there is no "social stigma arising from an adjudication of paternity." 279 N.W.2d at 345.

 A divorced man challenging a paternity finding pursuant to a dissolution decree is not without recourse. He may move to vacate or amend the decree on grounds of mistake, newly discovered evidence or fraud or misrepresentation by the adverse party. Minn.R.Civ.P. 60.02(1), (2), (3); *Hedstrom v. Hedstrom,* 304 Minn. 588, 232 N.W.2d 419 (1975) (allegations did not establish fraud, duress or mistake where husband had sworn to paternity at time of dissolution). We note that blood-grouping tests showing non-paternity to be highly probable have been held to be a reason justifying relief from the judgment without any time limitation on the bringing of a motion. *Wessels v. Swenson,* 289 N.W.2d 469 (Minn.1979).

 Also, the Uniform Parentage Act furnishes a remedy. It provides:

Subdivision 1. A child, his natural mother, *or a man presumed to be his father* under section 257.55, subdivision 1, clause (a), (b), or (c) may bring an action:

\* \* \* \* \* \*

(b) For the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, clause (a), (b), or (c) only if the action is brought within a reasonable time after the person bringing the action has obtained knowledge of relevant facts, *but in no event later than three years after the child's birth.*

Minn.Stat. § 257.57, subd. 1 (1982) (emphasis added). Since the children were more than three years old at the time of respondent's motion, this action was not available to him.

## DECISION

We reverse.