Clarine M. BRUCKMAN,
Petitioner, Appellant,

v.

Gilbert Scott KIRKUP, Respondent.

No. C2–86–2183.

Court of Appeals of Minnesota.

April 21, 1987.

---

1. The aggravated assault conviction was affirmed by the Minnesota Supreme Court. *State v. Johanson,* 358 N.W.2d 64 (Minn.1984). His Federal Court petition for a writ of habeas corpus was denied. *See Johanson v. Pung,* 795 F.2d 48 (8th Cir.1986). Prior proceedings did not address the issue presently litigated.

Tom Foley, Ramsey Co. Atty., Gail L. Young, Asst. Co. Atty., St. Paul, for appellant.

Bruce D. Kennedy, St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

In this URESA action, Clarine Bruckman appeals from the trial court's order setting child support according to the statutory guidelines but granting a temporary reduction below the guidelines amount for the first ten months of the ongoing support order. Appellant, who receives public assistance, claims the deviation was based on improper considerations and that the court disregarded the statutory demand for consideration of relevant factors and findings on the financial resources and needs of the child. We affirm the ongoing support order but modify the temporary reduction to conform to the statutory guidelines.

## FACTS

Appellant Clarine Bruckman and respondent Gilbert Kirkup are the parents of a child born on August 30, 1976. In July 1977, pursuant to court order, respondent began paying $50 each month to the Ramsey County Welfare Department as reimbursement for $1343 expended by the county for the prior care, confinement, and support expenses provided for appellant and the child. The court's order made no provision for ongoing child support.

After respondent completed payments under the reimbursement order, he began sending his monthly payments directly to appellant. Respondent apparently believed he had a legal obligation to make the payments. Through April 1986, respondent paid appellant $2780.

In early 1986, officials in Polk County, Wisconsin initiated a Uniform Reciprocal Enforcement of Support Act (URESA) action, seeking an order for ongoing child support. The case was next processed in Ramsey County, Minnesota, where respondent resides.

The trial court found respondent has an average net monthly income of $1087. The court found that "in reliance on" a $50 per month support obligation, respondent purchased a house and car with monthly payments of $300 and $275, respectively. The court also found respondent's expenses include a $100 per month payment on a $1000 debt to the Internal Revenue Service (IRS), and that he will complete payments on the debt in March 1987. The trial court made no other findings on respondent's expenses or on his resources in addition to his income. It made no findings on the child's financial resources or needs or appellant's resources or needs.

Applying the child support guidelines to respondent's net monthly income of $1087, the court determined that respondent's child support obligation would be $270 per month. The court determined the guide-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

lines would require a support obligation of $234 per month if credit were given for respondent's monthly payment to the IRS. However, the trial court deviated from the guidelines and ordered respondent to pay support of $150 per month beginning August 1, 1986, increasing to $270 per month beginning June 1, 1987. The order was based on the court's finding that:

Equity requires that this Court not ignore the fact that the obligor has mistakenly labored under the belief that his child support obligation was Fifty Dollars and No/100 Cents ($50.00) per month. In view of the obligor's payments of child support to the petitioner when he was under no order to pay support and in view of his One Hundred Dollar and No/100 Cent ($100.00) per month obligation for federal taxes, deviation from the child support guidelines is justified * * *.

Clarine Bruckman appeals the trial court's decision to limit support to $150 per month for the months of August 1986 through May 1987.

### ISSUE

Did the trial court furnish legally sufficient reasons and make adequate findings to support its decision to depart below the child support guidelines?

### ANALYSIS

■ Absent "a clear showing that the trial court abused its discretion, a determination of child support will not be reversed." *Pitkin v. Gross*, 385 N.W.2d 367, 368 (Minn.Ct.App.1986). However, in public assistance cases, the trial court is required to strictly apply the statutory child support guidelines. *Isanti County Family Services and Welfare Department ex rel. Edwardh v. Swanson*, 394 N.W.2d 180, 182–83 (Minn.Ct.App.1986). *See* Minn.Stat. § 518.551, subd. 5 (1984) (guidelines). The guidelines are equally applicable to URESA actions. *See* Minn.Stat. § 518C.17, subd. 1 (1984) (in URESA actions, the court shall order support payments under chapter 518).

■ Trial courts may deviate below the support guidelines only

after considering the factors in [Minn. Stat. § 518.17, subd. 4] and making express findings of fact as to the reason for the lower order. An order for support in an amount below the guidelines must include findings of fact regarding the financial resources and needs of the child.

Minn.Stat. § 518.17, subd. 5 (1984) (repealed by 1986 Minn. Laws ch. 406, § 9, with pertinent provisions incorporated into Minn.Stat. § 518.551, subd. 5 (1986)). The relevant factors listed in subdivision 4 are the financial resources and needs of both parents, and the financial resources and needs of the child, taking into account the standard of living the child would have enjoyed had the marriage not been dissolved, and the physical, emotional, and educational needs of the child. *Id.*, subd. 4.

Beginning June 1, 1987, the order for support strictly applies the statutory guidelines. However, the trial court found justification for a temporary ten-month reduction in support.

■ Prior payments of child support are not a proper consideration for ordering future support in an amount below that required by the statute. The obligation of parents derives from their "legal and natural duty" to "take care of [their children] until they are old enough to take care of themselves." *Mund v. Mund*, 252 Minn. 442, 445, 90 N.W.2d 309, 312 (1958). This duty of support "commences with the child's birth." *Jacobs v. Jacobs*, 309 N.W.2d 303, 305 (Minn.1981). We recognize that appellant's prior payments may stand in contrast to the poor performance of many noncustodial parents. Nevertheless, the trial court's deviation below the statutory guidelines cannot be supported on the grounds that respondent has honored his natural duty of support without the benefit of a court order.

■ Respondent's debt to the IRS, a "public debt," may justify a reduced child support payment. *See Hedelius v. Hedelius*, 361 N.W.2d 421, 424 (Minn.Ct.App. 1985). As the trial court found, this debt

would justify a temporary reduction of monthly support from $270 to $234.

■ We find no other circumstances here that permit us to affirm the trial court's determination. The trial court findings do not reveal consideration of the statutory deviation factors. *See* Minn.Stat. § 518.17, subds. 4 and 5 (1984). The trial court found respondent relied on a $50 per month support obligation in incurring mortgage and automobile debts. However, the statute does not permit deviation based on this consideration. *See Scott v. Scott*, 352 N.W.2d 62, 64 (Minn.Ct.App.1984) (acts in reliance on unchanging obligation are not valid indicator that modification is unjust).

■ In reliance on the court's finding that the guidelines would require a support obligation of $234 per month as long as respondent is paying $100 per month to the IRS, we modify the order for support to provide for monthly support of $234 beginning August 1, 1986, increasing to $270 per month on April 1, 1987.

### DECISION

The trial court's deviation below the guidelines was not supported by the requisite statutory findings or consideration of relevant factors. Respondent's support obligation is in the amount of $234, beginning August 1, 1986, increasing to $270 per month on April 1, 1987.

Affirmed as modified.