**STATE OF WISCONSIN, ex rel.,
Lorraine SOUTHWELL,
petitioner, Respondent,**

v.

**Michael W. CHAMBERLAND, Appellant.**

**No. C8–84–0143.**

Court of Appeals of Minnesota.

May 22, 1984.

Review Granted Aug. 3, 1984.

Robert M.A. Johnson, Anoka County Atty., Nancy C. Coleman, Sp. Asst. County Atty., Anoka, for respondent.

David P. Newman, James Schmeckpeper, Herrick & Newman, P.A., Fridley, for appellant.

Considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

Dunn County, Wisconsin, petitioned and moved Anoka County District Court to collect overdue child support payments from Michael W. Chamberland pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). Judgment was entered in behalf of Dunn County, Wisconsin and against appellant-Chamberland in the amount of $5,560, the stipulated amount of child support arrearages.

Chamberland appeals arguing respondent-Southwell's violation of the marriage dissolution decree in keeping the location of herself and the parties' minor child from appellant relieves him of his obligation to pay child support arrears.

Affirmed in part and remanded in part with directions.

## FACTS

A child was born to Michael Chamberland and Lorraine [Chamberland] Southwell on October 6, 1971. Southwell was given custody of the child following the couple's divorce on September 20, 1976. Chamberland was ordered to pay $140 per month in child support.

Southwell and the child moved out of Minnesota in the late summer of 1978, without a court order as required by the dissolution decree, and concealed their location from Chamberland until August 1983. During this time Chamberland made no support payments.

From April 16, 1981 to August 31, 1982 Southwell received AFDC for the support

of herself and the child from Dunn County, Wisconsin. As a condition of receiving public assistance for the child, Southwell assigned her right to child support arrearages to Wisconsin. *See* Wisc.Stat. § 49.-19(4)(h)(1)(b) (1982). (Similar to Minn.Stat. § 256.74, subd. 5 (Supp.1983)).

## ISSUE

1. Whether the custodial parent's removal of a child from the state in violation of a dissolution decree, and her concealment of the child's location, relieves the noncustodial parent from the payment of child support arrearages?

2. Whether a sister state may collect child support arrearages in excess of the amount expended for child support?

## ANALYSIS

Wisconsin proceeded against Chamberland under the Uniform Reciprocal Enforcement of Support Act (URESA) which states: "All duties of support, including the duty to pay arrearages, are enforceable by a proceeding under sections 518C.01 to 518C.36." Minn.Stat. § 518C.03 (1982).

### 1. *Denial of visitation—no defense.*

Chamberland argues that Southwell's violation of the dissolution decree and concealment of their child's location, which made it impossible for Chamberland to make support payments, relieves him of the responsibility of paying arrearages for this period of time. URESA does not allow such a defense:

> The determination or *enforcement of a duty of support owed to one obligee is unaffected by interference by another obligee with rights of custody or visitation* granted by a court.

Minn.Stat. § 518C.16 (1982) (emphasis added).

We note the consistency of the above statute with Minn.Stat. § 518.612 (1982), entitled "Independence of Provisions of Decree or Temporary Order":

> Nor is interference with visitation rights or taking a child from this state without

permission of the court or the noncustodial parent a defense to nonpayment of support.

*Id.*

These statutes demonstrate a legislative intent that interference with visitation rights is no defense in child support enforcement proceedings. *See England v. England,* 337 N.W.2d 681 (Minn.1983), ("The purpose of URESA is to improve and extend enforcement of interstate duties of support. Our legislature has expressed the intent that custody and visitation should not bear on enforcement of support obligations." *Id.* at 684 (cites omitted).)

The legislature provided Chamberland with only one remedy to deal with Southwell's violation of his visitation rights—petitioning the court for "an appropriate order." *See* Minn.Stat. § 518.612. Forgiveness of a support obligation is not a remedy. *See id.*

In *Kramer v. Kelly,* 265 Pa.Super. 58, 401 A.2d 799 (1979), the noncustodial parent attempted to use the same defense as Chamberland asserts here. In *Kramer,* the noncustodial parent made timely child support payments for two years before the custodial parent removed the child to a concealed location. The child was located approximately six months later through the use of a private detective. At trial the father argued that the mother prevented him from exercising his visitation rights. Therefore, the court should prevent enforcement of a contempt order against him for violating his support order. The Pennsylvania Superior Court stated:

> It is an accepted principle that the misconduct of the mother does not affect a father's duty to support his child. Indeed, this duty is well nigh absolute, and a support order must ordinarily be complied with even if the actions of the wife place her in contempt of court.

*Id.* 401 A.2d at 803. Recognizing, as our state does, *see England* at 684, that "matters of support are separate and independent from problems of visitation," the court concluded that absent extreme circum-

stances, "we are loath to deprive the child of support payments because of the improvident actions of the mother." *Id.* at 804. *See Schmidt v. Schmidt,* —— Pa.Super. ——, 459 A.2d 421, 423 (1983).

### 2. *URESA Reimbursement.*

In reviewing the judgment against Chamberland for $5,560, we question the trial court finding number 9, which provides: "From April 16, 1981 to August 31, 1982 Dunn County Wisconsin has expended $8,364.16 in AFDC *for the support of Lorraine Southwell and the minor child."* (Emphasis added).

A review of affidavits of a Dunn County investigator show that Dunn County, Wisconsin, provided public assistance in the amount of $103 per month from April 16, 1981 to October 1, 1981, and $226 per month from October 1, 1981 until August 31, 1982 *for the child.* Using these figures we note that Wisconsin expended $3,052.50 in public assistance for the support of the child. In addition to the amount paid for the child, the State of Wisconsin also apparently paid additional amounts for support of Southwell ($8,364.16—$3,052.50).

Chamberland only has a "duty of support" to the child, not to Southwell. *See* Minn.Stat. § 518C.02(3) (1982).[1] Only a duty of support, is enforceable under URESA. Minn.Stat. § 518C.03 (1982). Once a duty of support is found by the responding court, URESA allows the court to "order the obligor to furnish support or *reimbursement* therefor." Minn.Stat. § 518C.17(1) (Supp.1983) (emphasis added). "Reimbursement," as used in URESA, has not been previously construed in Minnesota.[2] We hold that Southwell's assignment of child support arrearages to Wisconsin is only effective for $3,052.50, an amount which will reimburse Wisconsin for its support of the parties' child.

If Wisconsin is awarded the entire child support arrearages of $5,560 based on its URESA petition which states that $8,364.16 was spent by it *supporting Southwell and the child,* Chamberland, who has no "duty of support" for his ex-wife, would be reimbursing Wisconsin for amounts it expended for her support. This decision, however, does not affect Chamberland's obligation to Southwell for the balance of the stipulated child support arrearages. In addition, since Southwell lived in Arizona before moving to Wisconsin and now lives there again, and Arizona has adopted URESA, Arizona could conceivably seek reimbursement for child support out of these same arrearages.

### DECISION

A judgment entered against the noncustodial parent for child support arrearages, which accumulated during a period when the noncustodial parent did not know the location of his child, is recoverable by a sister state in an URESA action to the extent that state expended public assistance funds for the child's support.

Affirmed in part and remanded in part with directions to enter judgment against Chamberland in behalf of the State of Wisconsin in the amount of $3,052.50.

---

1. "'Duty of support' means a duty of support, whether imposed or imposable by law or by order, decree or judgment of a court, whether interlocutory or final, or whether incidental to an action for divorce, separation, separate maintenance or otherwise and includes the duty to pay arrearages of support past due and unpaid." Minn.Stat. § 518C.02(3) (1982).

2. Minnesota law applies here since Chamberland resides in Minnesota. *See* Minn.Stat. § 518C.28 (1982).